**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF FLORIDA**

**DONNAHUE GEORGE,**
Plaintiff,
v.
**SAMUEL BANKMAN-FRIED,**
**CAROLINE ELLISON,**
**ALAMEDA RESEARCH LLC,**
**FTX TRADING LTD.,**
**CM-EQUITY AG,**
**DEPOSITORY TRUST & CLEARING CORPORATION (DTCC),**
**FINANCIAL INDUSTRY REGULATORY AUTHORITY (FINRA),**
and **JOHN DOES 1–50,**
Defendants.

Case No.: _____

FILED BY _____ D.C.
NOV 04 2025
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - FT. LAUD.

**COMPLAINT FOR SECURITIES FRAUD, MARKET MANIPULATION, CIVIL RICO VIOLATIONS, ANTITRUST VIOLATIONS, AND DAMAGES**

**JURY TRIAL DEMAND**

**I. INTRODUCTION**

1. This case arises from a **deliberate and criminal scheme** executed by **Sam Bankman-Fried, Caroline Ellison, Alameda Research LLC,** and **FTX Trading Ltd.**, with the assistance of **CM-Equity AG** and others, to **issue over 400 million synthetic AMC tokenized shares** that were **fraudulently represented to be backed 1:1 by real AMC common stock.**

2. In fact, **no such 400 million AMC shares existed**, and **FTX did not own or have custodial access to any material quantity of AMC shares** at the time these tokenized instruments were created and traded.

3. The **criminal case against Bankman-Fried (U.S. v. Bankman-Fried, No. 22-cr-673 (S.D.N.Y.))** and the **guilty plea of Caroline Ellison** confirm that these AMC tokens were **unbacked, fictitious**, and used as part of a **wider fraudulent enterprise involving wire fraud, securities fraud, and market manipulation**.

4. Defendants falsely marketed the tokens as being backed 1:1 by real AMC shares "held in custody by CM-Equity AG," which was itself false—**CM-Equity had terminated its relationship with FTX in December 2021**, months before these tokenized AMC shares were traded in massive volumes.

5. These **synthetic tokens were then used as "locates"** for short sales under **Regulation SHO**, enabling **naked short selling** of AMC stock and causing **massive artificial downward price pressure**, inflicting over **$2 million in damages** on the Plaintiff and untold losses on other retail AMC investors.

6. The conduct violated the **Securities Exchange Act of 1934**, the **Racketeer Influenced and Corrupt Organizations Act (RICO)**, and the **Sherman Act's prohibitions on restraints of trade and price suppression**.

## II. JURISDICTION AND VENUE

7. This Court has jurisdiction pursuant to:

    - 28 U.S.C. § 1331 (federal question);
    - 15 U.S.C. § 78aa (Securities Exchange Act);
    - 15 U.S.C. § 15 (Antitrust – Clayton Act § 4);
    - 18 U.S.C. § 1964(c) (Civil RICO).

8. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred in the Southern District of Florida, and Plaintiff resides in this district.

## III. PARTIES

9. **Plaintiff Donnahue George** is a Florida resident and retail investor who purchased and held AMC common stock through a U.S.-regulated brokerage.

10. **Defendant Samuel Bankman-Fried** is the founder and former CEO of FTX and Alameda Research. On March 28, 2024, he was **convicted by a federal jury** in the Southern District of New York of **securities fraud, wire fraud,**

**money laundering, and conspiracy** for his role in a multi-billion-dollar fraud.

11. **Defendant Caroline Ellison** served as the CEO of Alameda Research and **pleaded guilty** to criminal securities and wire fraud charges in December 2022. In her allocution, she **admitted under oath** that Alameda used customer funds and created fake positions, including the issuance of unbacked assets.

12. **Defendant Alameda Research LLC** was the affiliated trading firm of FTX and a key participant in executing the scheme described herein.

13. **Defendant FTX Trading Ltd.** was a now-bankrupt cryptocurrency exchange headquartered in the Bahamas that offered and traded synthetic AMC tokenized shares.

14. **Defendant CM-Equity AG** is a German-based financial firm falsely listed by FTX as custodian for its tokenized AMC shares. CM-Equity publicly ended its custodial relationship with FTX in December 2021.

15. **Defendant DTCC** is a clearinghouse with statutory responsibilities under federal securities law. DTCC facilitated settlement of transactions involving synthetic AMC shares and failed to act despite obvious manipulation and persistent failures to deliver.

16. **Defendant FINRA** is a self-regulatory organization that monitors market integrity and short selling practices. Despite clear violations of Regulation SHO involving AMC token activity, FINRA took no action to halt this manipulation.

17. **Defendants John Does 1–50** are unknown individuals and entities who conspired with, facilitated, or profited from the issuance and trading of unbacked AMC tokens.

## IV. FACTUAL ALLEGATIONS

18. In or around late 2022, FTX published materials indicating that it was offering trading in "AMC Tokenized Shares," **represented to be fully backed on a 1:1 basis by real AMC common stock** allegedly held in custody by CM-Equity AG.

19. FTX's website and API stated:

"AMC Tokenized Stocks are backed 1:1 by AMC common stock held by a third-party custodian."

20. **In reality, CM-Equity AG had ended its custodial relationship with FTX in December 2021**, and FTX **held no such AMC shares** when it issued these tokens.

21. Despite this, over **400 million AMC tokens were issued and traded on FTX**, as confirmed in forensic analyses disclosed during the criminal trial of Sam Bankman-Fried.

22. At trial, Caroline Ellison testified under oath that the tokens were **not backed by real AMC shares** and were used to manipulate prices and mislead investors.

23. These 400 million AMC tokens were used to fabricate **"locates"** for short sales under **Rule 203(b)(1)** of **Regulation SHO**, which mandates that a broker-dealer must have a reasonable belief that it can borrow the stock before selling short.

24. The issuance and use of these **unbacked AMC tokens** created a **fictitious and inflated supply of AMC shares**, distorting the true float, **flooding the market with synthetic shares**, and artificially depressing AMC's market price.

25. The result was **massive and sustained failures to deliver (FTDs)** in AMC stock, as reflected in publicly available DTCC data and FINRA threshold lists.

26. Despite having access to this data and an obligation to investigate, **DTCC and FINRA took no meaningful enforcement action**, allowing the manipulation to continue.

27. These facts are corroborated by government findings in *U.S. v. Bankman-Fried* and *U.S. v. Ellison*, in which the AMC token manipulation was part of the broader criminal enterprise.

---

## V. CLAIMS FOR RELIEF

**Count I – Securities Fraud**

**(15 U.S.C. § 78j(b); SEC Rule 10b-5)**

28. Defendants made materially false and misleading statements concerning the 1:1 backing of AMC tokens.

29. Plaintiff relied on the integrity of the securities markets and the truthful representation of asset-backed instruments.

30. Defendants acted with scienter. See *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007).

31. Plaintiff suffered financial loss as a direct and proximate result of these misrepresentations.

**Count II – Market Manipulation**

**(15 U.S.C. § 78i(a)(2))**

32. Defendants engaged in manipulative conduct, including the creation and sale of synthetic AMC tokens, for the purpose of artificially influencing the market price of AMC stock.

33. The conduct falls within the scope of Section 9(a)(2) of the Exchange Act and Rule 10b-5.

**Count III – Regulation SHO Violations**

**(SEC Rule 203(b)(1))**

34. FTX, Alameda, Bankman-Fried, and Ellison knowingly facilitated short sales of AMC without possessing or borrowing real AMC shares, in violation of SEC rules.

**Count IV – Common Law Fraud**

35. Defendants knowingly misrepresented material facts concerning the existence and backing of AMC tokens.

36. Plaintiff reasonably relied on these misrepresentations and was harmed.

---

**Count V – Civil RICO**

**(18 U.S.C. §§ 1962(c), (d))**

37. Defendants conducted and participated in an enterprise through a pattern of racketeering activity, including:

- Wire Fraud (18 U.S.C. § 1343)
- Securities Fraud (15 U.S.C. § 78j)
- Money Laundering (18 U.S.C. § 1956)

38. Criminal convictions of Bankman-Fried and Ellison establish predicate acts.

39. Plaintiff's loss was directly caused by the racketeering conduct. See *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479 (1985).

---

**Count VI – Antitrust Violations**

**(15 U.S.C. §§ 1–2; Sherman Act §§ 1–2)**

40. Defendants conspired to artificially suppress AMC's price by manipulating supply via unbacked synthetic tokens.

41. This constitutes an unreasonable restraint of trade and attempted monopolization of price discovery for AMC stock.

42. Plaintiff suffered direct injury in the form of depressed share value.

---

## VI. PRAYER FOR RELIEF

Plaintiff respectfully seeks judgment against all Defendants for:

- $2,000,000 in compensatory damages;
- Treble damages under Civil RICO (18 U.S.C. § 1964(c)) and the Sherman Act;
- $1,000,000,000 in punitive damages;
- Injunctive relief prohibiting unbacked tokenization of public equities;
- Costs and attorney's fees, if applicable;
- Any other relief this Court deems just and proper.

## VII. JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

---

Respectfully submitted,

**Donnahue George**
1012 NW 2nd St
Fort Lauderdale, FL 33311
Email: DonnahueGeorge@gmail.com
Tel: (347) 216-5257
**Pro Se Plaintiff**