UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 25-62222-Civ-PMH

**DONNAHUE GEORGE,**

      **Plaintiff,**

v.

**SAMUEL BANKMAN-FRIED, ET AL.,**

      **Defendants.**
_____/

## FINRA'S MOTION TO DISMISS

    Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Financial Industry Regulatory Authority, Inc. ("FINRA"), respectfully moves this Court for an order dismissing Plaintiff Donnahue George's Complaint.

## INTRODUCTION

    Without any particularity as to FINRA, the Complaint purports to assert claims for securities fraud, market manipulation, common law fraud, civil RICO and antitrust violations against FINRA. All of Plaintiff's claims against FINRA are barred by FINRA's absolute regulatory immunity, and Plaintiff lacks a private right of action to bring such claims. In addition, Plaintiff's claims against FINRA for alleged violations of SEC rules and regulations cited in the Complaint fail to state a cause of action upon which relief can be granted because those rules do not apply to FINRA's regulatory activities as a self-regulatory organization ("SRO"). For these reasons, the Complaint should be dismissed against FINRA.

**FACTUAL BACKGROUND**

1. **The Complaint**

The Complaint relies on conclusory, speculative and unsupported allegations to assert five counts against FINRA: Count I (Securities Fraud – 15 U.S.C. § 78j(b); SEC Rule 10b-5); Count II (Market Manipulation – 15 U.S.C. . § 78i(a)(2)); Count IV (Common Law Fraud); Count V (Civil RICO – 18 U.S.C. §§ 1962(c) and (d)); Count VI (Antitrust Violations – 15 U.S.C. §§ 1-2; Sherman Act §§ 1-2).

2. **FINRA Regulates its Broker-Dealer Members Subject to SEC Oversight**

FINRA[1] is a private, not-for-profit Delaware corporation and SRO registered with the Securities and Exchange Commission ("SEC") as a national securities association pursuant to the Maloney Act of 1938, 15 U.S.C. §§ 78o-3, *et seq.*, amending the Securities Exchange Act of 1934, 15 U.S.C. §§ 73a, *et seq.* ("Exchange Act"). As an SRO, FINRA is part of the Exchange Act's comprehensive plan for regulating the securities markets. *See* 15 U.S.C. §§ 78q, 78s; *Desiderio v. NASD, Inc.*, 191 F.3d 198, 201 (2d Cir. 1999), *cert. denied*, 531 U.S. 1069 (2001); *see also PennMont Sec. v. Frucher*, 586 F.3d 242, 245 (3d Cir. 2009), *cert. denied,* 559 U.S. 972 (2010). FINRA's regulatory duties are imposed by Congress and require FINRA to conduct daily regulation and administration of the securities markets. *See, e.g., Turbeville v. FINRA.*, 874 F.3d 1268, 1270-71 (11th Cir. 2017); *Empire Fin. Grp., Inc. v. FINRA*, 2009 U.S. Dist. LEXIS 133643, at * 5 (S.D. Fla. Jan. 15, 2009); *see also DL Capital Group, LLC v. Nasdaq Stock Mkt., Inc.*, 409 F.3d 93, 95 (2d Cir. 2005); *Domestic Sec., Inc.* v. SEC, 333 F.3d 239, 241-42 (D.C. Cir. 2003). Among its regulatory obligations, the Exchange Act requires FINRA to

---

[1] FINRA was formed in 2007 when its predecessor, the National Association of Securities Dealers, Inc. ("NASD"), consolidated its member-firm regulation and enforcement functions with the regulatory and enforcement functions of the New York Stock Exchange. *See* Order Approving Proposed Rule Change to Amend the By-Laws of NASD, 72 Fed. Reg. 42,169 (Aug. 1, 2007).

establish rules "designed to prevent fraudulent and manipulative acts and practices, to promote just and equitable principles of trade . . . and, in general, to protect investors and the public interest. . . ." 15 U.S.C. § 78o-3(b)(6). The Exchange Act also mandates that FINRA investigate and discipline member firms and their associated persons for violating FINRA rules and in certain cases, the federal securities laws. *Loftus v. FINRA*, 2021 U.S. Dist. LEXIS 18823, *2 (S.D.N.Y. Feb. 1, 2021) (quoting *Datek Sec. Corp. v. NASD*, 875 F. Supp. 230, 232 (S.D.N.Y. 1995)); *see also* 15 U.S.C. § 78o- 3(b).

FINRA exercises its regulatory authority in accordance with the requirements of the Exchange Act and under close supervision by the SEC. *Empire Fin.*, 2009 U.S. Dist. LEXIS 133643, at *20 ("[U]nder the comprehensive regulatory scheme for the securities industry that was established by Congress, FINRA's performance of its responsibilities is subject to the strict, on-going oversight of the SEC."). FINRA is obligated to comply with the Exchange Act, the SEC's rules and regulations, and its own rules. *See* 15 U.S.C. § 78s(g). The SEC has "broad supervisory responsibilities over [SROs]" and correspondingly broad power to enforce their compliance with these obligations. *Austin Mun. Secs., Inc. v. NASD, Inc.*, 757 F.2d 676, 680 (5th Cir. 1985). Thus, "Congress has vested in the SEC the obligation of ensuring that FINRA performs its statutory responsibilities." *Empire Fin.*, 2009 U.S. Dist. LEXIS 133643, at *20.

## LEGAL ARGUMENT

1. **Legal Standard**

To survive a motion to dismiss for failure to state a claim, a complaint must contain sufficient factual allegations "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Bare legal conclusions are insufficient. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A plaintiff . . . must demonstrate more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Simpson v. Sanderson Farms, Inc.*, 744 F.3d 702, 708 (11th Cir. 2014) (quoting *Twombly*, 550 U.S. at 555).

**2. Regulatory Immunity Bars All Claims Against FINRA**

FINRA is absolutely immune in the performance of its "statutorily delegated adjudicatory, regulatory, and prosecutorial functions." *Weissman v. NASD*, 500 F.3d 1293, 1296 (11th Cir. 2007); *see also Tawil v. FINRA*, 2023 U.S. Dist. LEXIS 117247 (N.D. Fla. May 24, 2023) (dismissing claims for injunctive relief based on FINRA's regulatory activities); *D'Alessio v. New York Stock Exch., Inc.*, 258 F.3d 93, 105 (2d Cir.), *cert. denied*, 534 U.S. 1066 (2001) (an SRO is "immune from liability for claims arising out of the discharge of its duties under the Exchange Act"); *Partnership Exch. Sec. Co. v. NASD*, 169 F.3d 606, 608 (9th Cir. 1999) (the NASD was protected by absolute immunity for its actions taken "under the authority delegated to it by the Exchange Act"). Every circuit court, including the Eleventh Circuit, that has considered the issue has reached the same conclusion. *See, e.g., Gallagher v. FINRA.*, 2022 U.S. App. LEXIS 15309, at *  (11th Cir. June 3, 2022) ("[W]hen an SRO is acting under the aegis of the Exchange Act's delegated authority . . . it enjoy[s the] privilege of immunity.") (quoting *Weissman*, 500 F.3d at 1297) (internal quotation marks omitted); *In re Series 7 Broker Qualification Exam Scoring Litig.*, 548 F.3d 110, 114, (D.C. Cir. 2008) ("When an SRO acts under the aegis of the Exchange Act's delegated authority, it is absolutely immune from suit for the improper performance of regulatory, adjudicatory, or prosecutorial duties delegated by the SEC."); *In re NYSE Specialists Secs. Litig.*, 503 F.3d 89, 96 (2d Cir. 2007) (Sotomayor, J.) (an SRO "is entitled to absolute immunity for actions it takes pursuant to its quasi-governmental role in the regulation of the securities market"); *Sparta Surgical Corp. v. NASD*, 159 F.3d 1209, 1215 (9th Cir. 1998) ("[S]elf-regulatory organizations had to enjoy freedom from civil liability when they acted in their regulatory capacity.").

To determine whether immunity applies to an SRO's conduct, courts "look to the objective nature and function of the activity for which the SRO seeks to claim immunity." *Weissman*, 500 F.3d at 1297; *see also Sparta*, 159 F.3d at 1214 ; *D'Alessio*, 258 F.3d at 104- 05. The dispositive question is

4

whether the Plaintiff's claims arise out of "the discharge of [FINRA's] duties under the Exchange Act." *Sparta*, 159 F.3d at 1213; *see also D'Alessio*, 258 F.3d at 104, 106. Here, the answer is plainly yes.

The Complaint contains very few references to FINRA and, to the extent they do relate to FINRA, the allegations concern regulatory actions that FINRA took or purportedly failed to take. For example, the Complaint alleges that "FINRA took no action to halt . . . manipulation" despite "clear violations of Regulation SHO involving AMC token activity," ECF No. 1, ¶ 16, and that "[d]espite having access to this data and an obligation to investigate . . . FINRA took no meaningful enforcement action, allowing the manipulation to continue." *Id.* ¶ 26. In short, the actions about which Plaintiff complains concern FINRA's regulatory activities, which courts have uniformly found to be immune from suit.

If a court determines that the complained of conduct is regulatory in nature, FINRA is immune from suit. That immunity is absolute, and courts do not recognize exceptions to regulatory immunity based on bad faith, *Desiderio*, 191 F.3d at 208, fraud, *DL Capital Group,* 409 F.3d at 98, or negligence, *Sparta* 159 F.3d at 1215 (9th Cir. 1998). This form of absolute immunity is "an integral part of the American system of securities regulation." *Dexter v. Depository Tr. & Clearing Corp.*, 406 F. Supp. 2d 260, 263 (S.D.N.Y. 2005), *aff'd*, 219 F. App'x 91 (2d Cir. 2007).

The allegations in the Complaint regarding FINRA are all directed to Plaintiff's dissatisfaction with *how* FINRA conducted its regulatory activities. Accordingly, FINRA is immune, and the Complaint should be dismissed against FINRA with prejudice.[2]

**3. Plaintiff Lacks a Private Right of Action to Pursue Claims Against FINRA**

Neither the Exchange Act nor any other statute provides for a cause of action against an SRO like FINRA for acts or omissions in connection with its duties as a securities regulator. To the contrary, courts have consistently held that no private right of action exists against an SRO for its regulatory activities. *See, e.g., Desiderio*, 191 F.3d at 208 ("[T]here is no private right of action available under the Securities Exchange Act . . . to challenge an exchange's failure to follow its own rules."); *Mohlman v. FINRA*, 2020 U.S. Dist. LEXIS 31781, at *12-13 (S.D. Ohio 2020) ("There is, however, no private right of action against FINRA (or its employees) for its regulatory acts—including entering regulatory settlements."); *Spicer v. Chicago Bd. of Options Exch., Inc.*, 977 F.2d 255, 260 (7th Cir. 1992) (declining to imply a right of action in section of Exchange Act "against [an SRO] for violating or failing to enforce its own rules"); *MM&S Fin., Inc. v. NASD*, 364 F.3d 908, 911-12 (8th Cir. 2004) ("[T]he Exchange Act does not create a private right of action against the NASD defendants for violating their own rules."); *In re Olick*,

---

[2] While leave to amend should be freely given "when justice so requires," "a district court need not allow an amendment that would be futile." *Parekh v. CBS Corp.*, 820 Fed. App'x 827, 834 (11th Cir. 2020). Here, any allegations Plaintiff might assert against FINRA would necessarily relate to FINRA's regulatory activities and thus any amendment would be futile. Although *pro se* complaints are held "to less stringent standards than formal pleadings drafted by lawyers," *Haines v. Kerner*, 404 U.S. 519, 520, 30 L. Ed. 2d 652, 92 S. Ct. 594 (1972) (*per curiam*), that does not mean they are held to no standard at all. *See Eidson v. Arenas*, 155 F.R.D. 215, 219 (M.D. Fla. 1994) (*pro se* litigants must comply with minimal pleading standards).While Plaintiff is proceeding *pro se* in this case, he was a member of the New York bar association until December 2008 when he was disbarred. *See Matter of George*, 58 A.D.3d 267 (2d Dept. 2008). Accordingly, Plaintiff should not be entitled to the leniency afforded to a traditional a *pro se* litigant. *See Stuart v. Ryan*, 2019 U.S. Dist,. LEXIS 49196, at * 3 (S.D. Fla. 2019) (a pro se plaintiff "is not entitled to the leniency often afforded to traditional pro se litigants as she is in fact an attorney . . . suspensions of her law license do not lessen that.") (quotations omitted), *aff'd in relevant part, vacated in part on other grounds*, 818 F. App'x 858, 861 (11th Cir. 2020).

2000 U.S. Dist. LEXIS 4275, at *11 (E.D. Pa. 2000) (a party "may not maintain a private cause of action against the NASD under the Exchange Act, or at common law, for regulatory actions taken by the NASD.").

As discussed above, the allegations asserted against FINRA relate only to its regulatory activities pursuant to the Exchange Act. For this reason, Plaintiff cannot state a private right of action against FINRA.

### 4. The Complaint Fails to State Any Claims Against FINRA

While this Court need not consider additional bases for dismissal because the Complaint is barred by absolute regulatory immunity and because Plaintiff lacks any private right of action against FINRA, each count in the Complaint fails to state a claim upon which relief can be provided.

#### A. Plaintiff's Securities Fraud Claims Fail to State a Claim (Counts I, II and IV)

The Complaint fails to state a claim for securities fraud. Specifically, SEC Rule 10b-5 applies exclusively to market participants and not to SROs like FINRA. To the extent Plaintiff is alleging that FINRA violates the Exchange Act by engaging in regulatory activities, as set forth above, Plaintiff has no private right of action to bring such a claim. Moreover, Plaintiff fails to plead these claims with the specificity required by Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act ("PLSRA"). The allegations related to securities fraud are entirely conclusory regarding FINRA's alleged misconduct. For example, the Complaint alleges that defendants made materially false and misleading statements concerning the backing of AMC tokens without identifying the alleged false statements, ECF No. 1, ¶ 28, that defendants engaged in manipulative conduct including the creation and sale of synthetic tokens, ECF No. 1, ¶ 32, and that defendants knowingly misrepresented material facts concerning the existence and backing of AMC tokens. ECF No. 1, ¶ 35. The Complaint offers no explanation of any alleged material misstatements or misrepresentations by FINRA.

Further, the allegations asserted in the Complaint fail to satisfy the elements of securities fraud (Count I). To state a claim for securities fraud under Rule 10b-5, a plaintiff must allege: (1) a material misrepresentation or omission; (2) made with scienter; (3) a connection with the purchase or sale of a security; (4) reliance on the misstatement or omission; (5) economic loss; and (6) a causal connection between the misrepresentation or omission and the loss. *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1236-37. (11th Cir. 2008). The Complaint does not allege that FINRA made any material misrepresentation or omission. Plaintiff does not allege that he purchased or sold AMC shares based on any misrepresentations or omission attributed to FINRA. *See generally* Compl. While the Complaint generally alleges that Plaintiff is a retail investor who purchased and held AMC common stock through a U.S. regulated brokerage, ECF No. 1, ¶ 9, Plaintiff offers no allegations that his purchase had any connection to any alleged misrepresentation or omission by FINRA.[3] The Complaint also does not identify any causal connection between Plaintiff's alleged economic loss and any action that FINRA took or failed to take. Accordingly, the Complaint fails to state a claim for securities fraud under Rule 10b-5.

The Complaint also fails to allege a Rule 10b-5 claim premised on market manipulation (Count II). To state a claim for securities fraud claim based on market manipulation, a Plaintiff must allege : (1) manipulative acts; (2) damage (3) caused by reliance on an assumption of an efficient market free of manipulation; (4) scienter; (5) in connection with the purchase or sale of securities; (6) furthered by the defendant's use of the mails or any facility of a national securities exchange. *See In re January 2021 Short Squeeze Trading Litig.*, 2023 U.S. Dist. LEXIS 231860 at * 75 (S.D. Fla. 2023). Again, the Complaint fails to allege any facts that establish FINRA engaged in market manipulation.

---

[3] Plaintiff cannot satisfy Rule 10b-5 by merely being a holder of AMC shares. *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, 547 U.S. 71, 85 (2006) (emphasis added) (fraud alleged under Rule 10b-5 must "coincide" with an actual securities transaction).

The Complaint also fails to state a claim for common law fraud (Count IV). While common law fraud has no all-embracing definition, it encompasses a "false representation of a material fact made by one who knew it was false . . . , made to one who did not know that it was false, with intent to deceive such person and to influence his action, which did deceive such person and influence his action to his damage." *United States v. Feldman*, 931 F.3d 1245, 1266 (11th Cir.2019) (W. Pryor, C.J., concurring) (quotation omitted). Claims sounding in common law fraud are subject to the heightened pleading requirements of Rule 9(b), which requires a plaintiff to allege "the who, what, when[,] where and how" of the fraudulent conduct. *Pop v. LuliFama.com, LLC* 145 F.4th 1285, 1296 (11th Cir. 2025). Plaintiff has not even attempted to meet this heightened pleading requirement to assert his common law fraud claim against FINRA; instead, he merely asserts conclusory allegations that defendants knowingly misrepresented material facts concerning the existence and backing of AMC tokens and that he reasonably relied on the misrepresentation and was harmed. *See* ECF No. 1, ¶¶ 35-6. The Complaint fails to identify any alleged misrepresentations (or omissions) FINRA made, when such statements were made, or to whom they were made.

For these reasons, Plaintiff failed to state any securities fraud claims, and Counts I, II, and IV should be dismissed.

### B. Plaintiff's RICO Claim Fails as a Matter of Law (Count V)

When presenting a claim under the civil provisions of RICO, a plaintiff must plausibly allege that the defendants: (1) operated or managed (2) an enterprise (3) through a pattern (4) of racketeering activity that included at least two predicate acts of racketeering, which (5) caused (6) injury to the business or property of the plaintiff. *Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1211 (11th Cir. 2020). If a plaintiff fails to adequately plead any one of these elements, he fails to state a claim upon which relief can be granted, and the complaint must be dismissed. *Id.*

Civil RICO claims "are essentially a certain breed of fraud claims, [which] must be pled with an increased level of specificity" under Rule 9(b). *Ambrosia Coal & Constr. Co. v. Morales*, 482 F.3d 1309, 1316 (11th Cir. 2007); *see also* Fed. R. Civ. P. 9(b) (requiring that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake"). To satisfy Rule 9(b), a RICO claim must allege: "(1) the precise statements, documents, or misrepresentations made; (2) the time and place of and person responsible for the statement; (3) the content and manner in which the statements misled the [p]laintiffs; and (4) what the [d]efendants gained by the alleged fraud." *Ambrosia Coal*, 482 F.3d at 1316-17.

The Complaint falls woefully short of the mark. Plaintiff does not plead that FINRA "operated or managed" an "enterprise." *See generally* Compl. The Complaint does not allege that FINRA made any specific statements, documents or misrepresentations, nor does it allege the time and place any such alleged statements were made or what FINRA purportedly gained from the alleged fraud. Instead, Plaintiff relies exclusively on conclusory statements that all defendants conducted and participated in an enterprise through a pattern of racketeering activity that included wire fraud, securities fraud and money laundering. *See* ECF No. 1, ¶¶ 37-9. To the extent the Complaint alleges any predicate acts, those acts are specifically attributed to other defendants. *Id.* at ¶¶ 37-38. Other than allegations related to convictions obtained against other defendants, the Complaint does not allege any other facts that support a finding that an enterprise exists, and it fails to "adequately plead relationships among those [purportedly] associated with the enterprise . . . ." *Omnipool, A.S. v. Multinational Def. Servs., LLC*, 32 F.4th 1298, 1309 (11th Cir. 2022) (affirming dismissal of RICO claims for failing to plead an enterprise existed) (quotations omitted). The allegations in the Complaint are also insufficient to infer any agreement. *See Lewis v. Mercedes-Benz USA, LLC*, 530 F. Supp. 3d 1183, 1216 (S.D. Fla. 2021) (dismissing RICO claim for failing to plead an enterprise because the complaint set out "no detail - let alone the precise detail required by Rule 9(b) - to support the notion that there was a purpose,

relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose") (internal citations omitted).[4]

Plaintiff's RICO claim also fails because it does not allege an actionable predicate act. In 1995, Congress amended the federal RICO statute by enacting Section 107 of the PSLRA, *Eagletech Communs. Inc., v. Citigroup, Inc.*, 2008 U.S. Dist. LEXIS 49432, * 34 (S.D. Fla 2008), which provides that "no person may rely upon conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962," unless the person who committed such conduct has been criminally convicted, *see id.* (quoting 18 U.S.C. § 1964(c)). Here, the predicate acts upon which Plaintiff relies are allegations of securities fraud, ECF No. 1, ¶ 37, and Plaintiff has not alleged, nor could he, that FINRA has been criminally convicted of such conduct. The PSLRA bar is construed broadly, and "[a] plaintiff cannot avoid the RICO Amendment's bar by pleading mail fraud, wire fraud and bank fraud as predicate offenses in a civil RICO action if the conduct giving rise to those predicate offenses amounts to securities fraud." *Licth v. Watson*, 567 F. App'x 689, 693 (11th Cir. 2014) (cleaned up) (quoting *Bald Eagle Area Sch. Dist. v. Keystone Fin., Inc.*, 189 F.3d 321, 331 (3d Cir. 1999)). "

### C. Plaintiff's Antitrust Claim Fails (Count VI)

In order to state a claim under Section 2 of the Sherman Act, a plaintiff must show: (1) that the defendant possessed the specific intent to achieve monopoly power by predatory or exclusionary conduct; (2) the defendant must in fact commit such anticompetitive conduct; and (3) there must have existed a dangerous probability that the defendant might have succeeded in its attempt to achieve monopoly power. *U.S. Anchor Mfg., Inc. v. Rule Indus., Inc.*, 7 F.3d 986,

---

[4] The Complaint also improperly lumps together all the defendants. RICO claims fall short of the heightened Rule 9(b) pleading standard when the claims are "devoid of specific allegations with respect to the separate [d]efendants" but "simply 'lump[] together' all of the [d]efendants in their allegations of fraud." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1381 (11th Cir. 1997). "[I]n a case involving multiple defendants . . . the complaint should inform each defendant of the nature of his alleged participation in the fraud." *Ambrosia Coal*, 482 F.3d at 1317.

993 (11th Cir. 1993) (citations omitted). Plaintiff pleads none of these elements. Instead, the Complaint contains vague and conclusory allegations that all defendants conspired to suppress AMC's stock price by manipulating supply, which Plaintiff concludes constituted an unreasonable restraint of trade and attempt to monopolize that resulted in injury to the Plaintiff. *See* ECF No. 1, ¶¶ 40-42. As set forth above, however, the specific allegations as to FINRA relate only to Plaintiff's dissatisfaction with *how* FINRA fulfilled its regulatory responsibilities. *See supra.* These vague and conclusory allegations fail to state a Sherman Act claim . *See Aquatherm Indus., Inc. v. Fla. Power & Light Co.*, 145 F.3d 1258, 1261 (11th Cir. 1998) (affirming dismissal of Section 2 antitrust claim because "vague, conclusory allegations are insufficient to state a claim upon which relief can be granted") (quotations omitted).

For these reasons, Count VI should be dismissed.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the Complaint with prejudice for failure to state a claim under Rule 12(b)(6).

Respectfully submitted,

*/s/David S. Mandel*
David S. Mandel
FBN 38040
**MANDEL & MANDEL LLP**
1680 Michigan Avenue, Suite 700
Miami Beach, FL 33139
Telephone: (305) 374-7771
dsm@mandel.law

*Counsel for Defendant,*
*Financial Industry Regulatory Authority, Inc.*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that, on January 5, 2026, the foregoing document was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record; additionally, a copy of the foregoing was sent by US mail to George at 1012 N.W. 2nd Street, Fort Lauderdale, FL 33311.

*David S. Mandel*