UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 25-62222-Civ-PMH

DONNAHUE GEORGE,

        **Plaintiff,**

v.

SAMUEL BANKMAN-FRIED, ET AL.,

        **Defendants.**
_____/

### FINRA'S OPPOSITION TO PLAINTIFF'S
### MOTION FOR PRELIMINARY INJUNCTION

    Defendant Financial Industry Regulatory Authority, Inc. ("FINRA") submits this opposition to Plaintiff's Motion for a Preliminary Injunction ("Motion").

### INTRODUCTION

    A preliminary injunction is extraordinary relief, and a plaintiff seeking such relief must establish four prerequisites. In the Motion, Plaintiff relies on vague and conclusory assertions that fail to satisfy his burden.  While Plaintiff fails to establish any of the prerequisites, most notably, Plaintiff cannot establish he is likely to succeed on the merits of the claims he asserts against FINRA because each of his claims relates exclusively to FINRA's regulatory activities.  As a result, Plaintiff's claims are barred by absolute regulatory immunity, and Plaintiff cannot pursue a private right of action against FINRA to bring such claims. Further, the Complaint fails to state any valid claims against FINRA.  Because Plaintiff fails to satisfy his burden of establishing that a preliminary injunction is appropriate in this case, the Motion should be denied.

## BACKGROUND

**1. FINRA's Role in Regulating the Securities Industry**

FINRA[1] is a private, not-for-profit Delaware corporation and SRO registered with the Securities and Exchange Commission ("SEC") as a national securities association pursuant to the Maloney Act of 1938, 15 U.S.C. §§ 78o-3, *et seq.*, amending the Securities Exchange Act of 1934, 15 U.S.C. §§ 73a, *et seq.* ("Exchange Act"). As an SRO, FINRA is part of the Exchange Act's comprehensive plan for regulating the securities markets. *See* 15 U.S.C. §§ 78q, 78s; *Desiderio v. NASD, Inc.*, 191 F.3d 198, 201 (2d Cir. 1999), *cert. denied*, 531 U.S. 1069 (2001); *see also PennMont Sec. v. Frucher*, 586 F.3d 242, 245 (3d Cir. 2009), *cert. denied*, 559 U.S. 972 (2010). FINRA's regulatory duties are imposed by Congress and require FINRA to conduct daily regulation of the securities markets. *See, e.g., Turbeville v. FINRA.*, 874 F.3d 1268, 1270-71 (11th Cir. 2017); *Empire Fin. Grp., Inc. v. FINRA*, 2009 U.S. Dist. LEXIS 133643, * 5 (S.D. Fla. Jan. 15, 2009); *see also DL Capital Group, LLC v. Nasdaq Stock Mkt., Inc.*, 409 F.3d 93, 95 (2d Cir. 2005); *Domestic Sec., Inc. v. SEC*, 333 F.3d 239, 241-42 (D.C. Cir. 2003). Among its regulatory obligations, the Exchange Act requires FINRA to establish rules "designed to prevent fraudulent and manipulative acts and practices, to promote just and equitable principles of trade . . . and, in general, to protect investors and the public interest. . . ." 15 U.S.C. § 78o-3(b)(6). The Exchange Act also mandates that FINRA investigate and discipline member firms and their associated persons for violating FINRA rules and in certain cases, the federal securities laws. *Loftus v. FINRA*, 2021 U.S. Dist. LEXIS 18823, *2 (S.D.N.Y. Feb. 1, 2021) (quoting *Datek Sec. Corp. v. NASD*, 875 F. Supp. 230, 232 (S.D.N.Y. 1995); *see also* 15 U.S.C. § 78o- 3(b).

---

[1] FINRA was formed in 2007 when its predecessor, the National Association of Securities Dealers, Inc. ("NASD"), consolidated its member-firm regulation and enforcement functions with the regulatory and enforcement functions of the New York Stock Exchange. *See* Order Approving Proposed Rule Change to Amend the By-Laws of NASD, 72 Fed. Reg. 42,169 (Aug. 1, 2007).

FINRA exercises its regulatory authority in accordance with the requirements of the Exchange Act and under close supervision by the SEC. *Empire Fin.*, 2009 U.S. Dist. LEXIS 133643, at *20 ("[U]nder the comprehensive regulatory scheme for the securities industry that was established by Congress, FINRA's performance of its responsibilities is subject to the strict, on-going oversight of the SEC."). FINRA is obligated to comply with the Exchange Act, the SEC's rules and regulations, and its own rules. *See* 15 U.S.C. § 78s(g). The SEC has "broad supervisory responsibilities over [SROs]" and correspondingly broad power to enforce their compliance with these obligations. *Austin Mun. Secs., Inc. v. NASD, Inc.*, 757 F.2d 676, 680 (5th Cir. 1985). Thus, "Congress has vested in the SEC the obligation of ensuring that FINRA performs its statutory responsibilities." *Empire Fin.*, 2009 U.S. Dist. LEXIS 133643, at *20.

## ARGUMENT

**1. Standard to Support Issuance of a Preliminary Injunction**

A preliminary injunction is "an extraordinary and drastic remedy not to be granted unless the movant clearly established the burden of persuasion as to each of the four prerequisites." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc) (quotation marks omitted). The prerequisites for obtaining a preliminary injunction require the plaintiff to demonstrate: (1) a "substantial likelihood of success on the merits"; (2) "irreparable injury" absent an injunction; (3) a balance of the equities in the plaintiff's favor; and (4) that the injunction would not be "adverse to the public interest." *Id*. A plaintiff must establish "all four prerequisites." *Brown v. Sec'y, U.S. Dep't of Health & Hum. Servs.*, 4 F.4th 1220, 1225 (11th Cir. 2021) (quotation marks omitted). Here, Plaintiff failed to meet this burden.

**2. There is No Likelihood of Success on the Merits**

There are multiple independent reasons that Plaintiff has failed to establish that his claims against FINRA are not likely to succeed on the merits.

3

### a. FINRA is Absolutely Immune for its Regulatory Activities

As an initial matter, FINRA is absolutely immune in the performance of its "statutorily delegated adjudicatory, regulatory, and prosecutorial functions." *Weissman v. NASD*, 500 F.3d 1293, 1296 (11th Cir. 2007); *see also Tawil v. FINRA*, 2023 U.S. Dist. LEXIS 117247, * at 4 (N.D. Fla. May 24, 2023) (dismissing claims for injunctive relief based on FINRA's regulatory activities); *D'Alessio v. New York Stock Exch., Inc.*, 258 F.3d 93, 105 (2d Cir.), *cert. denied*, 534 U.S. 1066 (2001) (an SRO is "immune from liability for claims arising out of the discharge of its duties under the Exchange Act"); *Partnership Exch. Sec. Co. v. NASD*, 169 F.3d 606, 608 (9th Cir. 1999) (NASD was absolutely immune for its actions taken "under the authority delegated to it by the Exchange Act"). Every circuit court, including the Eleventh Circuit, that has considered the issue has reached the same conclusion. *See, e.g., Gallagher v. FINRA*, 2022 U.S. App. LEXIS 15309, at * 4 (11th Cir. June 3, 2022) ("[W]hen an SRO is acting under the aegis of the Exchange Act's delegated authority . . . it enjoy[s the] privilege of immunity.") (quoting *Weissman*, 500 F.3d at 1297) (internal quotation marks omitted); *In re Series 7 Broker Qualification Exam Scoring Litig.*, 548 F.3d 110, 114, (D.C. Cir. 2008) ("When an SRO acts under the aegis of the Exchange Act's delegated authority, it is absolutely immune from suit for the improper performance of regulatory, adjudicatory, or prosecutorial duties delegated by the SEC."); *In re NYSE Specialists Secs. Litig.*, 503 F.3d 89, 96 (2d Cir. 2007) (Sotomayor, J.) (an SRO "is entitled to absolute immunity for actions it takes pursuant to its quasi-governmental role in the regulation of the securities market"); *Sparta Surgical Corp. v. NASD*, 159 F.3d 1209, 1215 (9th Cir. 1998) ("[S]elf-regulatory organizations had to enjoy freedom from civil liability when they acted in their regulatory capacity.") *abrogated in part on other grounds by Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Manning*, 578 U.S. 374 (2016).

To determine whether immunity applies to an SRO's conduct, courts "look to the objective nature and function of the activity for which the SRO seeks to claim immunity." *Weissman*, 500 F.3d at

1297; *see also Sparta*, 159 F.3d at 1214; *D'Alessio*, 258 F.3d at 104-05. The dispositive question is whether the Plaintiff's claims arise out of "the discharge of [FINRA's] duties under the Exchange Act." *Sparta*, 159 F.3d at 1213; *see also D'Alessio*, 258 F.3d at 104, 106. Here, the answer is plainly yes.

The Complaint contains very few references to FINRA, and to the extent there are allegations related to FINRA, those allegations concern FINRA's regulatory activities – actions that FINRA took or purportedly failed to take. For example, the Complaint alleges that "FINRA took no action to halt . . . manipulation" despite "clear violations of Regulation SHO involving AMC token activity," ECF No. 1, ¶ 16, and that "[d]espite having access to this data and an obligation to investigate . . . FINRA took no meaningful enforcement action, allowing the manipulation to continue," ECF No. 1, ¶ 26.

If a court determines that the complained of conduct is regulatory in nature, FINRA is immune from suit. That immunity is absolute, and courts do not recognize exceptions to regulatory immunity based on bad faith, *Desiderio*, 191 F.3d at 208, fraud, *DL Capital Group,* 409 F.3d at 98, or negligence, *Sparta* 159 F.3d at 1215 (9th Cir. 1998). This form of absolute immunity is "an integral part of the American system of securities regulation." *Dexter v. Depository Tr. & Clearing Corp*., 406 F. Supp. 2d 260, 263 (S.D.N.Y. 2005), *aff'd*, 219 F. App'x 91 (2d Cir. 2007).

The allegations in the Complaint regarding FINRA are all directed to Plaintiff's dissatisfaction with *how* FINRA conducted its regulatory activities. Because regulatory immunity bars Plaintiff's claims against FINRA, Plaintiff has failed to establish he is likely to succeed on the merits. Accordingly, the Motion should be denied.

> **b. Plaintiff Lacks a Private Right of Action to Pursue Claims Against FINRA**

Neither the Exchange Act nor any other statute provides for a private cause of action against an SRO like FINRA for acts or omissions in connection with its duties as a securities regulator. To the contrary, courts have consistently held that no private right of action exists against an SRO for its regulatory activities. *See, e.g., Desiderio*, 191 F.3d at 208 ("[T]here is no

5

private right of action available under the Securities Exchange Act . . . to challenge an exchange's failure to follow its own rules."); *Mohlman v. FINRA*, 2020 U.S. Dist. LEXIS 31781, at *12-13 (S.D. Ohio 2020) ("There is, however, no private right of action against FINRA (or its employees) for its regulatory acts—including entering regulatory settlements."); *Spicer v. Chicago Bd. of Options Exch., Inc.*, 977 F.2d 255, 260 (7th Cir. 1992) (declining to imply a right of action in section of Exchange Act "against [an SRO] for violating or failing to enforce its own rules"); *MM&S Fin., Inc. v. NASD*, 364 F.3d 908, 911-12 (8th Cir. 2004) ("[T]he Exchange Act does not create a private right of action against the NASD defendants for violating their own rules."); *In re Olick*, 2000 U.S. Dist. LEXIS 4275, at *11 (E.D. Pa. 2000) (a party "may not maintain a private cause of action against the NASD under the Exchange Act, or at common law, for regulatory actions taken by the NASD.").

As discussed above, to the extent the Complaint includes allegations regarding FINRA's activities, FINRA was acting in its regulatory capacity under the Exchange Act. For this reason, Plaintiff cannot pursue a private right of action against FINRA. As such, Plaintiff is not likely to succeed on the merits of his claims, and the Motion should be denied.

   **c. Plaintiff Fails to State Any Valid Claim Against FINRA**

The Complaint also fails to establish a likelihood of success on each of the claims Plaintiff purports to assert against FINRA.

    **i. Plaintiff Cannot Succeed on the Merits of His Fraud Claims**

Plaintiff does not establish that he is likely to succeed on the merits of his fraud claims. Specifically, to state a claim for securities fraud under SEC Rule 10b-5, a plaintiff must allege: (1) a material misrepresentation or omission; (2) made with scienter; (3) a connection with the purchase or sale of a security; (4) reliance on the misstatement or omission; (5) economic loss; and (6) a causal connection between the misrepresentation or omission and the loss. *Mizzaro v. Home Depot, Inc.*, 544

6

F.3d 1230, 1236-37 (11th Cir. 2008). The Complaint does not allege that FINRA made any material misrepresentation or omission, nor does it allege that Plaintiff purchased or sold any security based on any purported misrepresentation or omission. *See generally* Compl.  Moreover, the Complaint does not identify a causal connection between Plaintiff's alleged economic loss and any action FINRA allegedly took or failed to take. *See generally id.*

The Complaint also fails to allege a Rule 10b-5 claim premised on market manipulation. To state a claim for securities fraud claim premised on market manipulation, a plaintiff must allege: (1) manipulative acts; (2) damage; (3) caused by reliance on an assumption of an efficient market free of manipulation; (4) scienter; (5) in connection with the purchase or sale of securities; (6) furthered by the defendant's use of the mails or any facility of a national securities exchange. *See In re January 2021 Short Squeeze Trading Litig.*, 2023 U.S. Dist. LEXIS 231860 at * 75 (S.D. Fla. 2023).  The Complaint relies on conclusory allegations and fails to allege the requisite facts to establish a market manipulation claim. *See generally* Compl.

The Complaint also fails to state a claim for common law fraud. While common law fraud has no all-embracing definition, it encompasses a "false representation of a material fact made by one who knew it was false . . . , made to one who did not know that it was false, with intent to deceive such person and to influence his action, which did deceive such person and influence his action to his damage." *United States v. Feldman*, 931 F.3d 1245, 1266 (11th Cir. 2019) (W. Pryor, C.J., concurring) (internal quotation marks omitted). Claims sounding in common law fraud are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), which requires that plaintiff to allege "the who, what, when[,] where and how" of the fraudulent conduct. *Pop v. LuliFama.com, LLC* 145 F.4th 1285, 1296 (11th Cir. 2025). Plaintiff failed to meet this heightened pleading requirement; instead, Plaintiff relies exclusively on conclusory allegations that defendants knowingly misrepresented material facts concerning the existence and backing of AMC tokens and that he reasonably relied on the

misrepresentation and was harmed. *See* ECF No. 1, ¶¶ 35-36. The Complaint does not allege that FINRA made any purported misrepresentations (or omissions), when such statements were made, and to whom they were made. Accordingly, the Complaint fails to plead the common law fraud claim with the required specificity.

### ii. Plaintiff Cannot Succeed on His RICO Claim

Further, Plaintiff cannot succeed on the merits of his civil RICO claim. When presenting a claim under the civil provisions of RICO, a private plaintiff must plausibly allege that the defendants: (1) operated or managed (2) an enterprise (3) through a pattern (4) of racketeering activity that included at least two predicate acts of racketeering, which (5) caused (6) injury to the business or property of the plaintiff. *Cisneros v. Petland, Inc*., 972 F.3d 1204, 1211 (11th Cir. 2020). If a plaintiff fails to adequately plead any one of these elements, he fails to state a claim upon which relief can be granted, and the claim must be dismissed. *Id.*

Civil RICO claims "are essentially a certain breed of fraud claims, [which] must be pled with an increased level of specificity" under Rule 9(b). *Ambrosia Coal & Constr. Co. v. Morales*, 482 F.3d 1309, 1316 (11th Cir. 2007); *see also* Fed. R. Civ. P. 9(b) (requiring that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake"). To satisfy Rule 9(b), a civil RICO claim must allege: "(1) the precise statements, documents, or misrepresentations made; (2) the time and place of and person responsible for the statement; (3) the content and manner in which the statements misled the [p]laintiffs; and (4) what the [d]efendants gained by the alleged fraud." *Ambrosia Coal*, 482 F.3d at 1316-17. The Complaint falls woefully short of the mark. Plaintiff has not pled that FINRA "operated or managed" an "enterprise." *See generally* Compl. The Complaint does not identify any specific statements, documents or misrepresentations that FINRA made, nor does it allege the time and place for any such statements, or what FINRA purportedly gained from the alleged fraud. *Id.* Instead, Plaintiff concludes that all defendants conducted and participated in an enterprise

8

through a pattern of racketeering activity that included wire fraud, securities fraud and money laundering.  *See* ECF No. 1, ¶ 37.

The predicate acts upon which Plaintiff relies to assert his RICO claim also preclude relief. Specifically, Plaintiff alleges that other defendants were purportedly convicted of related crimes. *See* ECF No. 1, ¶¶ 37-38. Plaintiff, however, offers no allegations supporting the existence of an enterprise, and he fails to "adequately plead relationships among those associated with the enterprise . . . ." *Omnipool, A.S. v. Multinational Def. Servs., LLC*, 32 F.4th 1298, 1309 (11th Cir. 2022) (affirming dismissal of RICO claims for failing to plead an enterprise existed) (quotations omitted). The existence of criminal convictions against some defendants is insufficient to infer an agreement among all of the defendants. *See Lewis v. Mercedes-Benz USA, LLC*, 530 F. Supp. 3d 1183, 1216 (S.D. Fla. 2021) (dismissing RICO claims for failing to plead an enterprise because the complaint set out "no detail - let alone the precise detail required by Rule 9(b) - to support the notion that there was a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose") (internal citations omitted). The Complaint further fails to allege an actionable predicate act as to FINRA. In 1995, Congress amended the federal RICO statute by enacting Section 107 of the Private Securities Litigation Reform Act ("PSLRA"), *Eagletech Communs. In., v. Citigroup, Inc.* 2008 U.S. Dist. LEXIS 49432, * 34 (S.D. Fla 2008), which provides that "no person may rely upon conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962," unless the person who committed such conduct has been criminally convicted. *See id.*, (*quoting* 18 U.S.C. § 1964(c)). Here, the predicate acts upon which Plaintiff relies are allegations of securities fraud, ECF No. 1, ¶ 37, and Plaintiff has not alleged, nor could he, that FINRA was criminally convicted of such fraud.  The PSLRA bar is construed broadly, and "[a] plaintiff cannot avoid the RICO Amendment's bar by pleading mail fraud, wire fraud and bank fraud as predicate offenses in a civil RICO action if the conduct giving rise to those predicate offenses

9

amounts to securities fraud." *Id.* (cleaned up) (quoting *Bald Eagle Area Sch. Dist. v. Keystone Fin., Inc.*, 189 F.3d 321, 331 (3d Cir. 1999)).

### iii. Plaintiff Cannot Succeed on His Antitrust Claim

Finally, Plaintiff cannot succeed on his antitrust claim. In order to state a claim under Section 2 of the Sherman Act, a plaintiff must establish: (1) that the defendant possessed the specific intent to achieve monopoly power by predatory or exclusionary conduct; (2) the defendant must in fact commit such anticompetitive conduct; and (3) there must have existed a dangerous probability that the defendant might have succeeded in its attempt to achieve monopoly power. *U.S. Anchor Mfg., Inc. v. Rule Indus., Inc.*, 7 F.3d 986, 993 (11th Cir. 1993) (citations omitted). Plaintiff pleads none of these elements. Instead, the Complaint contains conclusory allegations that all defendants conspired to suppress AMC's stock price by manipulating supply, and Plaintiff concludes that defendants' conduct constituted an unreasonable restraint of trade and attempt to monopolize that resulted in injury to the Plaintiff. *See* ECF No. 1, ¶¶ 40-42. As set forth above, however, the specific allegations as to FINRA relate only to Plaintiff's dissatisfaction with *how* FINRA fulfilled its regulatory responsibilities. *See supra.* These vague and conclusory allegations fail to support a Sherman Act claim. *See Aquatherm Indus., Inc. v. Fla. Power & Light Co.*, 145 F.3d 1258, 1261 (11th Cir. 1998) (affirming dismissal of Section 2 antitrust claim because "vague, conclusory allegations are insufficient to state a claim upon which relief can be granted") (quotations omitted).

\*             \*             \*

For these reasons, Plaintiff has no likelihood of success on the merits of his claims, and the Motion should be denied.

### 3. Plaintiff Also Fails to Establish the Remaining Prerequisites for a Preliminary Injunction

Plaintiff fails to satisfy his burden of establishing the three remaining prerequisites for a preliminary injunction. In a thinly-veiled and unsuccessful attempt to satisfy his burden, Plaintiff recites conclusory statements pertaining to the irreparable harm, balance of equities and public interest prerequisites:

- The continued presence of synthetic AMC tokens in circulation suppresses Plaintiff's remaining AMC share value. This ongoing price distortion cannot be remedied solely by money damages, and constitutes irreparable harm. ECF 3, at 3 (emphasis removed).
- Defendants have no lawful interest in issuing or trading unbacked tokenized securities. Preventing further manipulation protects legitimate shareholders. *Id.*
- Public equity markets rely on integrity, transparency, and real supply and demand. Unchecked synthetic asset creation undermines confidence and violates core securities laws. Courts recognize that protecting market integrity is a critical public interest. *Id.* (emphasis removed).

It is axiomatic that such unsupported and conclusory statements are insufficient to satisfy Plaintiff's burden with respect to the remaining prerequisites required for the Court to grant the extraordinary relief sought. Accordingly, the Motion should be denied.

## CONCLUSION

WHEREFORE, Defendant FINRA respectfully requests that the Court deny Plaintiff's Motion and grant such other and further relief to which FINRA may be entitled.

Respectfully submitted,

/s/David S. Mandel
David S. Mandel
FBN 38040
**MANDEL & MANDEL LLP**
1680 Michigan Avenue, Suite 700
Miami Beach, FL 33139
Telephone: (305) 374-7771
dsm@mandel.law

*Counsel for Defendant,*
*Financial Industry Regulatory Authority, Inc.*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that, on January 5, 2026, the foregoing document was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record; additionally, a copy of the foregoing was sent by US mail to George at 1012 N.W. 2nd Street, Fort Lauderdale, FL 33311.

*David S. Mandel*