# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

Case No. 25-62222-Civ-PMH

**DONNAHUE GEORGE,**

    **Plaintiff,**

v.

**SAMUEL BANKMAN-FRIED, ET AL.,**

    **Defendants.**

_____/

## FINRA'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS

Defendant Financial Industry Regulatory Authority, Inc. ("FINRA"), responds to Plaintiff's Opposition to FINRA's Motion to Dismiss.

## INTRODUCTION

Plaintiff's Opposition confirms what FINRA's Motion to Dismiss demonstrated: this case improperly seeks to hold FINRA liable for how it discharged—or allegedly failed to discharge—its regulatory responsibilities under the Exchange Act. No amount of artful recharacterization can transform the Plaintiff's claims into anything other than an impermissible attack on FINRA's regulatory functions. The Opposition offers no viable path around the insurmountable barriers of absolute immunity and the absence of a private right of action. The Motion to Dismiss should be granted.

**ARGUMENT**

**I. PLAINTIFF'S CLAIMS ARE BARRED BY ABSOLUTE REGULATORY IMMUNITY**

*A. Immunity Extends to All Regulatory Functions, Including Alleged Inaction*

Plaintiff attempts to carve out an exception to absolute regulatory immunity for "non-discretionary regulatory omissions and inaction." ECF 24, p. 1. This argument finds no support in the law. The Eleventh Circuit and every other circuit to address the issue have made clear that SRO immunity is "absolute" when the SRO acts "under the aegis of the Exchange Act's delegated authority." *Weissman v. NASD*, 500 F.3d 1293, 1296-97 (11th Cir. 2007).[1] This immunity applies whether the SRO acts or fails to act, and whether its decisions are deemed correct or incorrect.

The cases Plaintiff cites do not support a different conclusion, and instead support applying immunity to FINRA's alleged inaction. In *DL Capital Group, LLC v. Nasdaq Stock Market, Inc*., the Second Circuit held that absolute immunity precluded claims against NASDAQ challenging its decision to cancel trades that resulted in losses to the plaintiff. 409 F.3d 93, 100 (2d Cir. 2005). The court explicitly declined to create an exception to the SRO's immunity defense for alleged fraud as a "matter not simply of logic but of intense practicality since [otherwise] the [SRO's] exercise of its quasi-governmental functions would be unduly hampered by disruptive and recriminatory lawsuits." *Id.* at 99. (internal quotations omitted).

Similarly, in *Standard Investment Chartered, Inc. v. NASD, Inc*., the Court recognized that an SRO and its officers are entitled to absolute immunity from private damages suits in connection with the discharge of their regulatory responsibilities. 637 F.3d 112, 115 (2d Cir. 2011). The Court explained that a functional test must be applied to determine the applicability of immunity and recognized that absolute immunity applies where the alleged misconduct concerns disciplinary proceedings against members,

---

[1] Other courts reaching the same conclusion about SRO immunity is discussed in FINRA's Motion to Dismiss. *See* ECF 18, p.4-5.

2

enforcement of securities rules and regulations and general regulatory oversight of the SRO's members, interpretation of securities laws and regulations, the referral of members to the SEC or other governmental agencies for enforcement or criminal prosecution under securities laws, the publication of regulatory decisions, and an SRO's amendment of its bylaws where the amendments are inextricable from the SRO's role as a regulator. *Id*. at 116.

### B. The Complaint Challenges Quintessentially Regulatory Conduct

Every allegation in the Complaint against FINRA concerns regulatory activity. Plaintiff alleges that "FINRA took no action to halt . . . manipulation" (ECF 1, ¶ 16), that FINRA "took no meaningful enforcement action" (*id.* ¶ 26), and that FINRA failed to investigate violations of Regulation SHO, *id*. These activities are textbook regulatory functions. The Exchange Act expressly requires FINRA to "provide a fair procedure for the disciplining of members" and to enforce compliance with federal securities laws and FINRA rules. 15 U.S.C. § 78o-3(b)(7)-(8). Whether FINRA exercises that authority aggressively, passively, or not at all is a regulatory decision protected by absolute immunity. Plaintiff's attempt to recast regulatory omissions as "non-discretionary" fails because all regulatory decisions—including enforcement priorities, investigative scope, and disciplinary actions—are inherently discretionary. *See Sparta Surgical Corp. v. NASD*, 159 F.3d 1209, 1215 (9th Cir. 1998) (immunity extends to regulatory activities even if allegedly made in a "capricious" or "tartuffian manner . . . ").

### C. Plaintiff's "Market Participant" and "Bad Faith" Arguments Fail

Plaintiff suggests FINRA acted as a "market participant" or that acts "taken in bad faith or ultra vires" cause FINRA to forfeit immunity. ECF 24, p. 2. Neither theory is supported by the Complaint or the law. Plaintiff does not allege—nor can he—that FINRA bought or sold securities, operated a trading platform for profit, or engaged in any commercial activity outside the scope of its regulatory activities. FINRA's enforcement decisions and regulatory activities bear no resemblance to such conduct.

Second, courts uniformly reject the notion that bad faith or improper motive strips an SRO of immunity. If a court determines that an SRO was exercising a regulatory function, the SRO's conduct is protected by an immunity that is absolute. Indeed, courts have declined to carve out exceptions to regulatory immunity based on bad faith, *Desiderio v. NASD*, 191 F.3d 198, 208 2d Cir. 1999), *cert. denied*, 531 U.S. 1069 (2001), fraud, *DL Capital Group,* 409 F.3d at 98, or negligence, *Sparta,* 159 F.3d at 1215 (9th Cir. 1998). Plaintiff's speculative and unsupported allegations that FINRA purportedly knew about and failed to take action to prevent manipulation of AMC shares does not provide any basis to deprive FINRA of the protections afforded by regulatory immunity.

## II. PLAINTIFF HAS NO PRIVATE RIGHT OF ACTION AGAINST FINRA

Plaintiff concedes there is no express private right of action under the Exchange Act to sue FINRA for its regulatory conduct, but he argues an implied right exists. *See* ECF 24, p. 4. Plaintiff's argument is foreclosed by binding precedent. In *Turbeville v. FINRA*, the Eleventh Circuit considered whether a member firm or registered representative had a private right of action against FINRA, and the court determined that the Exchange Act's silence regarding the existence of a private right of action clearly indicates Congress's intent not to provide one. *See* 874 F.3d 1268, 1276 (11th Cir. 2017); *see also Desiderio*, 191 F.3d at 208 ("There is no private right of action available under the Securities Exchange Act . . . to challenge an exchange's failure to follow its own rules.").

Plaintiff's reliance on *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71 (2006) is misplaced. *Merrill Lynch* concerned the scope of the preemption provision in the Securities Litigation Uniform Standards Act, not whether private rights of action exist against SROs under the Exchange Act. *See id*. at 85-87. Moreover, Plaintiff inaccurately cites the legal proposition set forth *In re NYSE Specialists Secs. Litig,* where the court **expressly declined** to carve out a fraud exception to SRO immunity. 503 F.3d 89, 101 (2d Cir. 2007). Moreover, the court in *In re NYSE Specialists* recognized

4

that an SRO's inaction to enforce its own rules implicates quasi-governmental functions delegated to SROs under the Exchange Act. *See id*.at 100, n. 4.

Furthermore, as explained below, each of Plaintiff's claims fails independently.

## III. PLAINTIFF'S CLAIMS FAIL TO STATE A CAUSE OF ACTION

### A. Securities Fraud Claims (Counts I, II, IV)

Plaintiff argues that his securities fraud claims survive because FINRA's omissions created a "false impression of market integrity." ECF 24, p. 3. This theory fails for multiple reasons.

Rule 10b-5 applies to "any person" who makes a material misstatement or omission "in connection with the purchase or sale of any security." 17 C.F.R. § 240.10b-5. The Complaint does not allege that FINRA purchased or sold securities, made any statement to Plaintiff, or owed Plaintiff a duty to disclose. The Complaint does not identify a single communication from FINRA to Plaintiff or to the market. Without an actionable misstatement or omission, there can be no Rule 10b-5 claim. Plaintiff's reliance on *Affiliated Ute Citizens v. United States*, is misplaced because that case involved a sale of securities and focused on whether an omission in connection with that sale required proof positive of reliance. *See* 406 U.S. 128, 140, 153-4 (1972). In contrast, the Plaintiff in this case does not allege that he purchased or sold AMC shares based on FINRA's alleged conduct. Plaintiff cannot satisfy Rule 10b-5 by merely being a holder of AMC shares. *See Merrill Lynch,* 547 U.S. at 85 (fraud alleged under Rule 10b-5 must "coincide" with an actual securities transaction).

Plaintiff's claim for market manipulation (Count II) fails for similar reasons. Section 9(a)(2) of the Exchange Act prohibits manipulation "for the purpose of inducing the purchase or sale of such security by others." 15 U.S.C. § 78i(a)(2). The Complaint does not allege that FINRA engaged in any manipulative trading or made any false statements to induce trading. The Opposition's vague assertion that FINRA "enabled" manipulation by failing to act, ECF 24, p.2, does not satisfy the elements of a manipulation claim under Section 9. Plaintiff's common law fraud claim (Count IV) suffers from the

5

same deficiencies and fails to meet Rule 9(b)"'s heightened pleading standard. Plaintiff does not identify any false statement made by FINRA, to whom it was made, or when. Conclusory allegations that FINRA "falsely represented a functioning regulatory regime while ignoring known manipulation," ECF 24, p. 3, are insufficient. *See In re January 2021 Short Squeeze Trading Litig.*, 2023 U.S. Dist. LEXIS 231860, * 75 (S.D. Fla. 2023) (to state a claim for securities fraud claim based on market manipulation, a Plaintiff must allege: (1) manipulative acts; (2) damage (3) caused by reliance on an assumption of an efficient market free of manipulation; (4) scienter; (5) in connection with the purchase or sale of securities; (6) furthered by the defendant's use of the mails or any facility of a national securities exchange).

### B. RICO Claim (Count V)

Plaintiff's RICO claim fails on multiple grounds. Plaintiff's alleged predicate acts of securities fraud are barred by the PSLRA, which prohibits reliance on "conduct that would have been actionable as fraud in the purchase or sale of securities" unless the defendant has been criminally convicted. 18 U.S.C. § 1964(c). Courts construe this bar broadly to include wire fraud, mail fraud, and other RICO predicates that are based on securities fraud. *See Licht v. Watson*, 567 F. App'x 689, 693 (11th Cir. 2014).

Plaintiff's assertion that the Complaint alleges "predicate acts of wire fraud, money laundering, and systemic concealment" and that his claims are not limited to securities fraud, ECF 24, p. 3, is belied by the Complaint itself. The only predicate acts identified relate to alleged securities fraud and market manipulation by other defendants. ECF 1, ¶¶ 37-38. Generic references to "wire fraud" and "money laundering" without factual allegations do not satisfy Rule 9(b) or state a RICO claim.

### C. Antitrust Claim (Count VI)

Plaintiff's antitrust claim fares no better. To state a Sherman Act claim, Plaintiff must allege: (1) specific intent to monopolize; (2) predatory or exclusionary conduct; and (3) a dangerous probability of success. *See U.S. Anchor Manufacturing, Inc. v. Rule Indus. Inc.*, 7 F.3d 986, 993 (11th Cir. 1993). The

Complaint alleges none of these elements as to FINRA. It does not identify any agreement between FINRA and others, any specific anticompetitive conduct by FINRA, or any relevant market in which FINRA competes. Plaintiff's theory that FINRA's alleged failure to discipline FINRA registrants constitutes an antitrust violation, ECF 24, p. 4, is nonsensical. Regulatory enforcement decisions are not "trade" and cannot constitute a restraint thereof.

Moreover, the Supreme Court has also found that the securities laws preclude application of the antitrust laws where "the two are 'clearly incompatible.'" *Credit Suisse Sec. (USA) LLC v. Billing*, 551 U.S. 264, 275 (2007). To determine whether there is "sufficient incompatibility to warrant an implication of preclusion," courts look to the following factors: "(1) the existence of regulatory authority under the securities law to supervise the activities in question; (2) evidence that the responsible regulatory entities exercise that authority; . . . (3) a resulting risk that the securities and antitrust laws, if both applicable, would produce conflicting guidance, requirements, duties, privileges, or standards of conduct[; and] (4) . . . the possible conflict affected practices that lie squarely within an area of financial market activity that the securities law seeks to regulate." *Id*. at 275-6 (citing *Gordon v. NYSE*, 422 U.S. 659 (1975); *U.S. v. NASD, Inc.*, 422 U.S. 694 (1975)).

All four factors are present here. First, FINRA's conduct—regulatory oversight, enforcement decisions, and investigation of potential securities violations—is squarely governed by the Exchange Act and SEC regulations. The Exchange Act expressly requires FINRA to "enforce compliance" with federal securities laws and FINRA rules. 15 U.S.C. § 78o-3(b)(7). Second, securities regulation and antitrust law are "clearly incompatible" in this context. The antitrust laws assume free market competition, while the securities laws explicitly authorize and require regulatory oversight that may restrict market behavior to protect investors and ensure fair markets. Third, the SEC exercises comprehensive authority over FINRA's activities and can review, modify, or set aside FINRA's regulatory decisions. 15 U.S.C. § 78s(d)-(e). Fourth, the conduct alleged in the Complaint lies squarely

within an area that securities laws seek to regulate. As discussed above, the allegations in the Complaint all relate to FINRA's regulatory activities. *See supra*.

Accordingly, Plaintiff's antitrust claim is precluded by the Exchange Act.

## CONCLUSION

Plaintiff challenges FINRA's regulatory activities and seeks to impose liability for decisions that fall squarely within the scope of FINRA's statutory mandate. Such claims are barred by absolute immunity, foreclosed by the absence of a private right of action, and fail to state a cause of action under any legal theory advanced. Plaintiff's Opposition to FINRA's Motion to Dismiss offers no basis to reach a different conclusion.

For the foregoing reasons, the Court should dismiss the Complaint against FINRA with prejudice.

Respectfully submitted,

/s/David S. Mandel
David S. Mandel
FBN 38040
**MANDEL & MANDEL LLP**
1680 Michigan Avenue, Suite 700
Miami Beach, FL 33139
Telephone: (305) 374-7771
dsm@mandel.law

*Counsel for Defendant,*
*Financial Industry Regulatory Authority, Inc.*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that, on January 21, 2026, the foregoing document was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record; additionally, a copy of the foregoing was sent by email to the plaintiff at donnahuegeorge@gmail.com and US mail to Donnahue George at 1012 N.W. 2nd Street, Fort Lauderdale, FL 33311.

*David S. Mandel*