UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 25-62222-Civ-PMH

DONNAHUE GEORGE,

        Plaintiff,

v.

SAMUEL BANKMAN-FRIED, ET AL.,

        Defendants.

_____/

**THE DEPOSITORY TRUST & CLEARING CORPORATION'S
REPLY IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT**

Plaintiff's Opposition to DTCC's Motion (the "Opposition") does not grapple with, let alone refute what the Motion established: that the Complaint's conclusory allegations fail to state a claim against DTCC. The Opposition also fails to refute the Motion's showing that absolute regulatory immunity bars Plaintiff's claims. Instead, the Opposition's characterization of the Complaint, and the authority it relies on, confirms that immunity bars Plaintiff's claims. This Court should dismiss the claims against DTCC with prejudice.

**I.    Plaintiff's Conclusory Allegations Against DTCC Do Not State Any Claim Upon Which Relief Could Be Granted.**

The Motion demonstrated why the Complaint's two vague and conclusory allegations about DTCC fail to state a claim. Mot. at 4-9.[1] The Opposition offers little substantive response; instead, Plaintiff primarily recites the elements of his claims and asserts, in the same conclusory

---

[1] As explained in the Motion, DTCC construes the allegations against it also as allegations against its two subsidiaries that perform settlement and clearing functions: The Depository Trust Company and National Securities Clearing Corporation. *See* Mot. at 2 n.2.

1

fashion as in his Complaint, that his allegations state a claim. *See* Opp. at 3-4.

They do not.

To support his Rule 10b-5 securities fraud claim (Count I), Plaintiff argues that DTCC's alleged failure to act created a "false impression of a fair and orderly market." Opp. at 3. But to state a claim under Rule 10b-5, Plaintiff must allege that DTCC made a material misstatement or omission "in connection with the purchase or sale of any security." 17 C.F.R. § 240.10b-5. The Complaint does not allege that DTCC made any statement to Plaintiff or omitted any information that it had a duty to disclose to Plaintiff. Plaintiff therefore fails to state a Rule 10b-5 claim. Indeed, the very case Plaintiff relies on demonstrates the fatal flaws in Plaintiff's claim. In *Affiliated Ute Citizens v. United States*, the Court addressed whether an omission in connection with the sale of a security required proof of reliance. *See* 406 U.S. 128, 140, 153-4 (1972). Here, Plaintiff does not allege that he purchased or sold stock, let alone that any purchase or sale was made because of any DTCC misstatement or omission. *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, 547 U.S. 71, 85 (2006) (fraud alleged under Rule 10b-5 must "coincide" with an actual securities transaction, not merely holding a security that lost value).

Plaintiff's arguments to support his market manipulation claim (Count II) also fail. Section 9(a)(2) of the Exchange Act prohibits manipulation "for the purpose of inducing the purchase or sale of such security by others." 15 U.S.C. § 78i(a)(2). Plaintiff does not allege that DTCC engaged in any manipulative trading or sought to induce trading by others. Plaintiff argues that his allegations that that DTCC "facilitated transactions" while "ha[ving] access to data" about "manipulation" by others is sufficient to state claim. Opp. at 3. But these allegations do not plead any element of a Section 9 manipulation claim. *See, e.g.*, *In re January 2021 Short Squeeze Trading Litig.*, 620 F. Supp. 3d 1231, 1247 (S.D. Fla. 2022).

Plaintiff's common-law fraud claim (Count IV) is deficient for the same reasons and fails to meet the heightened pleading standard of Rule 9(b). Plaintiff argues that his assertions that DTCC "[f]ailed to disclose or correct" alleged irregularities and "allow[ed] investors to believe the settlement system was valid" state a claim. *See* Opp. at 4. This is wrong. These assertions do not allege any false statement or omission by DTCC, let alone to whom it was made, or when, as required by Rule 9(b). *See, e.g.*, *Space Coast Credit Union v. Merrill, Lynch, Pierce, Fenner & Smith Inc.*, 295 F.R.D. 540, 545-49 (S.D. Fla. 2013).

The Motion demonstrates that Plaintiff's RICO claim (Count V) fails for multiple independent reasons, including that the Private Securities Litigation Reform Act ("PSLRA") bars a RICO claim based on predicate acts of securities fraud unless the defendant has been criminally convicted. Plaintiff's assertion that the Complaint alleges other "predicate acts of wire fraud, money laundering, and systemic concealment" does not save his claim. *See* Opp. at 3. "In determining whether the PSLRA bars a civil RICO claim, courts view the complaint in its entirety and reject the invitation to parse the plaintiff's allegations." *Eagletech Commc'ns Inc v. Citigroup, Inc.*, No. 07-60668-CIV, 2008 WL 3166533, at *9 (S.D. Fla. June 27, 2008). Here, the Complaint's allegations concern only DTCC's role in the securities markets, and the only predicate acts identified relate to alleged securities fraud and market manipulation by other defendants. Compl. ¶¶ 15, 26, 38. Generic references to "wire fraud" or "money laundering" do not state a RICO claim where the substance of the alleged predicate acts contradicts the labels placed on them. *See Bald Eagle Area Sch. Dist. v. Keystone Fin., Inc.*, 189 F.3d 321, 329 (3d Cir. 1999). The PSLRA therefore bars the civil RICO claim.

Even if the PSLRA did *not* bar civil RICO here, Plaintiff's claim would fail because the Complaint fails to plead the other elements of the claim. *See Cisneros v. Petland, Inc.*, 972 F.3d

1204, 1211-19 (11th Cir. 2020); *see also* Mot. at 7.

Plaintiff's antitrust claim (Count VI) also fails because the Opposition's assertion that Plaintiff "alleges that DTCC … conspired to suppress AMC's stock price, restrict legitimate trading activity, and monopolize price discovery mechanisms" is belied by the Complaint itself, which only alleges that DTCC "failed to act despite obvious manipulation" and "took no meaningful enforcement action, allowing the manipulation to continue." *Compare* Opp. at 4, *with* Compl. ¶¶ 15, 26. The allegations in the Complaint have nothing to do with pricing conspiracies or monopolization, and thus they cannot sufficiently state any claim under the Sherman Act. *See, e.g.*, *Spanish Broad. Sys. of Fla., Inc. v. Clear Channel Commc'ns, Inc.*, 376 F.3d 1065, 1074, 1076-77 (11th Cir. 2004).

Additionally, the antitrust claim should be dismissed because application of the antitrust laws is precluded where they are "clearly incompatible" with the securities laws. *Credit Suisse Secs. (USA), LLC v. Billing*, 551 U.S. 264, 275 (2007). Courts consider: "(1) the existence of regulatory authority under the securities law to supervise the activities in question; (2) evidence that the responsible regulatory entities exercise that authority; … (3) a resulting risk that the securities and antitrust laws, if both applicable, would … conflict[; and] (4) [such] possible conflict … lie[s] squarely within an area of financial market activity that the securities law seeks to regulate." *Id.* at 275-76. Here, Plaintiff's attempt to bring antitrust claims is precluded because: (1) DTCC derives its regulatory authority from the securities laws, *see* Mot. at 1-2; (2) the SEC exercises its authority over DTCC in this area, *see* Mot. at 2; (3) there is a risk of conflict because, to protect investors, securities laws authorize regulatory actions that may restrict market activity, while antitrust laws bar such restrictions, *see* Compl. ¶ 41; Mot. at 1; and (4) the Complaint plainly focuses on conduct within an area the securities laws seek to regulate, *see* Mot. at 1-2, 10. For this

independent reason, Plaintiff's antitrust claim cannot move forward against DTCC.

The Complaint fails to state any claim against DTCC. The Opposition fails to address the Complaint's deficiencies. The Court should dismiss DTCC from this action.

## II. The Court Should Dismiss DTCC From This Action For The Independent Reason That DTCC Is Immune From Suit, And The Dismissal Should Be With Prejudice.

As an SRO, DTCC is absolutely immune from any civil suit related to its "performance of its … regulatory duties." *Gallagher v. Fin. Indus. Reg. Auth., Inc.*, No. 21-13605, 2022 WL 1815594, at *3 (11th Cir. June 3, 2022).

Plaintiff argues that DTCC is "not entitled to absolute immunity for conduct falling outside its narrow quasi-governmental regulatory role." Opp. at 2. But this is entirely irrelevant because Plaintiff's only allegations about DTCC concern DTCC's regulatory role: DTCC "failed to act despite obvious manipulation" and "took no meaningful enforcement action, allowing the manipulation to continue." Compl. ¶¶ 15, 26. The Opposition confirms that Plaintiff's claims arise from DTCC's alleged "fail[ure] to act" and its purported "abdicat[ion] of its responsibilities" in its regulatory role to "monitor and ensure integrity in the clearing process." Opp. at 2. The Court therefore must dismiss DTCC from this action because Plaintiff cannot "pierce [DTCC's] quasi-governmental immunity for the performance of its … regulatory duties." *Gallagher*, 2022 WL 1815594, at *3; *see, e.g.*, *Empire Fin. Grp., Inc. v. v. Fin. Indus. Reg. Auth., Inc.*, No. 08-80534-CIV-RYSKAMP/VITUNAC, 2009 WL 10644856, at *6-*7 (S.D. Fla. Jan. 15, 2009).

Plaintiff's argument that he has pleaded around DTCC's immunity by alleging that DTCC's failure to act "enabled unlawful conduct" is wrong. As shown by the very cases Plaintiff cites, immunity applies when an SRO allegedly fails to act and even if its decisions turn out to be incorrect. *See, e.g.*, *Standard Inv. Chartered, Inc. v. Nat'l Ass'n of Secs. Dealers, Inc.*, 637 F.3d 112, 116-17 (2d Cir. 2011); *DL Cap. Grp., LLC v. Nasdaq Stock Mkt., Inc.*, 409 F.3d 93, 97-100

(2d Cir. 2005); *Empire Fin.*, 2009 WL 10644856, at *6-*7; *see also, e.g.*, *D'Alessio v. N.Y. Stock Exch., Inc.*, 258 F.3d 93, 104-06 (2d Cir. 2001) (applying SRO immunity upon allegations of stock exchange's failure to monitor violations of securities laws on its platform); *Hofman v. Fidelity Brokerage Servs., LLC*, No. No. 2:23-cv-00881-MCS-PVC, 2023 WL 3872564, at *7 (C.D. Cal. May 8, 2023) (applying SRO immunity for facilitating transactions that plaintiff alleged were fraudulent).

Plaintiff also argues that DTCC is not protected by SRO immunity because he has alleged that DTCC acted in bad faith by taking "ultra vires" action, furthering a fraud, or engaging in commercial activity as a market participant. Opp. at 2. First, Plaintiff has not alleged, nor could he in good faith allege, that DTCC engaged in the purchase or sale or securities or engaged in any relevant commercial activity. *See* Mot. at 6. Second, a wall of authority has held that there is no bad faith or "fraud exception." *DL Cap.*, 409 F.3d at 99 ("[I]t behooves the Court *not* to carve out a fraud exception to the absolute immunity of an SRO." (emphasis added)); *see, e.g.*, *Standard Inv.*, 637 F.3d at 114-17 (finding SRO immunity upon allegations of misstatements in a proxy solicitation); *Desiderio v. Nat'l Ass'n of Secs. Dealers, Inc.*, 191 F.3d 198, 208 (2d Cir. 1999) (rejecting "bad faith" exception to SRO immunity); *Sparta Surgical Corp. v. Nat'l Ass'n of Secs. Dealers, Inc.*, 159 F.3d 1209, 1215 (2d Cir. 1998) (same); *Empire Fin.*, 2009 WL 10644856, at *6 (rejecting fraud exception because courts "do[] not analyze immunity by the claims made, but by the *functions* the immune entity performs" (emphasis added)).

Finally, Plaintiff argues that SRO immunity is "a fact-intensive question that cannot be decided on a motion to dismiss." Opp. at 2. Plaintiff is flat wrong. Both cases that Plaintiff cites for this proposition address a motion to dismiss. *See Weissman v. Nat'l Ass'n of Secs. Dealers, Inc.*, 500 F.3d 1293, 1299 (11th Cir. 2007) ("[I]n deciding whether NASDAQ is entitled to

6

absolute immunity, we look to the nature and function of NASDAQ's actions as alleged in the complaint."); *Loftus v. Fin. Indus. Reg. Auth., Inc.*, No. 20-Cv-7290 (SHS), 2021 WL 325773, at *1 (S.D.N.Y. Feb. 1, 2021).[2] Courts routinely decide SRO immunity on motions to dismiss because it is a threshold legal question. *See, e.g.*, *Gallagher*, 2022 WL 1815594, at *1; *Empire Fin.*, 2009 WL 10644856, at *9. Here, this Court can and should dismiss all claims against DTCC for the independent reason that immunity bars them.

The Court should dismiss Plaintiff's claims with prejudice because Plaintiffs' allegations center squarely on DTCC's SRO functions, and no conceivable repleading of it could ever give rise to liability. *See, e.g.*, *Gallagher*, 2022 WL 1815594, at *3; *Park v. Fin. Indus. Reg. Auth., Inc.*, No. 2:23-CV-69-RWS 2023 WL 11795601, at *6-*7 (N.D. Ga. Sept. 25, 2023); *Hensley v. TD Ameritrade Inc.*, No. 3:23-cv-05159-DGE, 2023 WL 12068975, at *2-*4, *8 (W.D. Wash. Oct. 2, 2023); *Conover v. Fin. Indus. Reg. Auth., Inc.*, No. 14-cv-03065-MEJ, 2014 WL 4273305, at *5 (N.D. Cal. Aug. 28, 2014).

## Conclusion

The Court should dismiss with prejudice all claims against DTCC in this action.

Dated: January 22, 2026

Respectfully submitted,

*/s/ Curtis Carlson*
Curtis Carlson
FBN 236640
**CARLSON & ASSOCIATES, P.A.**
2655 S. Le Jeune Road, Ste. 1108
Coral Gables, FL 33134
Tel: 305-372-9700
Email: carlson@carlson-law.net

---

[2] One case does not even address SRO immunity; it concerns exhaustion of administrative remedies. *See Loftus*, 2021 WL 325773, at *3-*4.

                                        Gregory M. Boyle (*pro hac vice*)
                                        **JENNER & BLOCK LLP**
                                        353 N. Clark Street
                                        Chicago, IL 60654
                                        (312) 923-2651
                                        GBoyle@jenner.com

                                        *Attorneys for Defendant The Depository Trust & Clearing Corporation*

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 22, 2026, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system, thereby serving all counsel of record with active ECF filing status. I further certify that on January 22, 2026, after effectuating electronic filing, I will cause to be served a copy of the foregoing document via email and U.S. mail upon the following:

Donnahue George
1012 N.W. 2nd Street
Fort Lauderdale, FL 33311


Dated: January 22, 2026


/s/ *Curtis Carlson*
Curtis Carlson