IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 25-62222-CIV-HUNT

DONNAHUE GEORGE,
Plaintiff,

v.

SAMUEL BANKMAN-FRIED, FTX TRADING LTD.,
ALAMEDA RESEARCH LLC, CAROLINE ELLISON,
DTCC, and FINRA,
Defendants.



FILED BY _____ D.C.

APR 06 2026

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - FT. LAUD.

AMENDED COMPLAINT

Plaintiff Donnahue George, proceeding pro se, alleges:

## I. JURISDICTION AND VENUE

1. This Court has jurisdiction under 28 U.S.C. § 1331 and Section 27 of the Securities Exchange Act (15 U.S.C. § 78aa).
2. This action arises under:
   o Section 10(b) of the Securities Exchange Act of 1934;
   o Rule 10b-5;
   o The Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962.
3. Venue is proper in this District under 28 U.S.C. § 1391 because Plaintiff resides in this District and suffered injury here.

## II. PARTIES

4. Plaintiff Donnahue George is an investor in AMC Entertainment Holdings, Inc. ("AMC") residing in Fort Lauderdale, Florida.
5. Defendant Samuel Bankman-Fried ("SBF") was the founder and controlling principal of FTX and Alameda Research.

6. Defendant FTX Trading Ltd. operated a digital asset platform offering tokenized securities.
7. Defendant Alameda Research LLC was a trading firm affiliated with FTX.
8. Defendant Caroline Ellison was CEO of Alameda Research.
9. Defendant DTCC (Depository Trust & Clearing Corporation) operates clearing and settlement systems for U.S. securities markets.
10. Defendant FINRA is a self-regulatory organization overseeing broker-dealers and trading activity.

## III. FACTUAL ALLEGATIONS

### A. Plaintiff's AMC Investment

11. Plaintiff purchased AMC shares in or around **February 2020.**
12. Plaintiff held those shares continuously throughout the relevant period.
13. Plaintiff relied on the integrity of the market price of AMC shares, which is presumed to reflect legitimate supply and demand.

### B. FTX Representations Regarding AMC Tokens

14. FTX offered "tokenized stocks," including AMC-related tokenized instruments.
15. FTX represented on its platform and related materials that such AMC tokens were **backed 1:1 by AMC common stock.**
16. FTX further represented that **hundreds of millions of such tokens existed**, including approximately **400 million AMC-related tokens**.
17. These representations conveyed that each token corresponded to a real AMC share and did not introduce artificial supply.

### C. Lack of Backing

18. Upon information and belief, these representations were false.
19. Public information indicates that any custodial arrangement associated with such tokens was terminated in or around December 2021.
20. There is no publicly verifiable evidence that Defendants possessed sufficient AMC shares to back approximately 400 million tokens.
21. Upon information and belief, Defendants did not possess AMC shares sufficient to support the volume of tokens represented.

## D. Synthetic Supply and False Locates

22. Upon information and belief, Defendants created and utilized AMC-related tokenized instruments that were not backed by actual AMC shares.
23. Upon information and belief, these unbacked tokens were used as substitutes or **"locates"** in connection with trading activity.
24. These instruments enabled the execution and settlement of transactions involving AMC shares without corresponding underlying securities.
25. By using such instruments as **false locates**, Defendants facilitated trading activity that artificially increased the apparent supply of AMC shares.
26. This artificial supply diluted the true supply of AMC shares and **suppressed AMC's market price**.

## E. DTCC's Role

27. Trading in AMC shares during the relevant period was processed through clearing and settlement systems operated by DTCC.
28. Plaintiff alleges that trading volume in AMC shares exceeded the number of legitimately issued shares.
29. Upon information and belief, DTCC processed or settled transactions involving instruments not backed by actual shares.
30. To the extent DTCC facilitated settlement of synthetic or unbacked instruments, such conduct exceeds purely ministerial clearing functions.

## F. FINRA's Role

31. Trading in AMC securities was subject to FINRA oversight.
32. Upon information and belief, trading activity reflected volumes inconsistent with actual share supply.
33. To the extent FINRA engaged in conduct beyond its protected regulatory functions, including permitting non-compliant trading practices, such conduct falls outside immunity.

## G. Criminal Proceedings

34. Defendant Bankman-Fried was convicted of fraud related to FTX operations.
35. Defendant Ellison pleaded guilty and admitted to deceptive financial practices.
36. These proceedings confirm systemic misconduct involving misrepresentation.

## H. Plaintiff's Injury and Loss Causation

37. Plaintiff held AMC shares throughout the relevant period.
38. Defendants' conduct introduced artificial supply into the market.
39. This conduct **suppressed AMC's price below its true value**.
40. But for Defendants' conduct, AMC's price would have reflected true supply and demand.
41. Plaintiff suffered losses exceeding **$2,000,000**.

## IV. CLAIMS FOR RELIEF

## COUNT I – SECURITIES FRAUD (RULE 10b-5)

42. Plaintiff incorporates paragraphs 1–41.
43. Defendants engaged in a manipulative scheme by:

a. Representing AMC tokens were backed 1:1 by real shares;
b. Advertising approximately 400 million such tokens;
c. Creating or facilitating synthetic supply.

44. Defendants acted with scienter.
45. Plaintiff relied on the integrity of the market price of AMC shares.
46. Defendants' conduct distorted that price.
47. Plaintiff suffered damages.

## COUNT II – RICO (18 U.S.C. § 1962(c))

(Against SBF, FTX, Alameda, Ellison)

48. Plaintiff incorporates paragraphs 1–47.
49. Defendants formed an association-in-fact enterprise consisting of FTX, Alameda, SBF, and Ellison.
50. The purpose of the enterprise was to generate profits through misrepresented financial instruments, including AMC tokenized securities.
51. The enterprise functioned as a continuing unit with defined roles.

## Predicate Acts – Wire Fraud

52. Defendants used interstate wires, including internet-based platforms, to:

a. Represent that AMC tokens were backed 1:1;
b. Advertise approximately 400 million tokens;
c. Facilitate transactions involving such tokens.

53. These representations were false.

---

**False Locates Scheme**

54. Upon information and belief, Defendants used unbacked AMC tokens as **false locates** in trading activity.
55. These acts enabled trading without actual shares.
56. Each such use constitutes wire fraud.

---

**Pattern and Injury**

57. Defendants' conduct was continuous and repeated.
58. Plaintiff was injured by reason of this conduct.
59. Plaintiff suffered damages exceeding $2,000,000.

---

## V. DAMAGES

60. Plaintiff suffered damages exceeding $2,000,000.

---

## VI. DEMAND FOR JURY TRIAL

61. Plaintiff demands trial by jury.

---

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests:

1. Judgment against Defendants;
2. Compensatory damages;
3. Punitive damages;

4. Costs;
5. Any further relief the Court deems just.

---

**SIGNATURE**

Donnahue George
1012 NW 2nd Street
Fort Lauderdale, FL 33311
(347) 210-5577
DonnahueGeorge@gmail.com
Pro Se

---

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 6th day of April, 2026, I served a copy of the foregoing Amended Complaint on all Defendants and/or counsel of record via U.S. Mail and/or CM/ECF.

Donnahue George